IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELANIA FELIX DE ASENCIO, ET AL.** : | No. 00-CV-4294 |
| **Plaintiffs,** : | |
| v. : | |
| **TYSON FOODS, INC.** : | |
| **Defendant.** : | |

## ORDER FOR JURY VIEW

AND NOW, this ____ day of _____, 2006, upon consideration of the Plaintiff's Motion For Jury View and it appearing that the trial of this action will be materially served thereby, it is hereby ORDERED that said Motion is GRANTED and that the Jury shall, at an appropriate time during the course of the trial, view the plants and the workers therein performing their work activities at Defendant's New Holland Complex.

BY THE COURT:

_____
Robert F. Kelly
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MELANIA FELIX DE ASENCIO, ET AL. | : | No. 00-CV-4294 |
|---|---|---|
| Plaintiffs, | : | |
| v. | : | |
| TYSON FOODS, INC. | : | |
| Defendant. | : | |

## MOTION FOR JURY VIEW

Plaintiffs hereby move for the Court to permit a Jury View of the Tyson chicken-processing facilities. This is highly probative and useful evidence, uninfluenced and unburdened by the limitations or potential biases of selectively-produced pictures or videotape, for the very facts this Jury will be judging, and the issues it will be deciding. This is a unique and one of the rare cases in which a full appreciation for the critical facts, in their truest form, are available for the Jury to see, hear and sense. The Jury can see, hear, smell and experience, and decide for themselves with their own eyes, ears and senses, whether the activities and time at issue are matters required by the job. Tyson's position is that these activities and the time is for their own benefit, and not for Tyson's benefit. Tyson should have no hesitation in letting the Jury see the truth here, especially if Tyson genuinely believes the facts are in their favor. If ever there was a case for a Jury View, this is it. Under the circumstances, and given the issues the Jury will decide, there is no comparable "substitute" evidence. How better to decide if something is "work" by seeing it live, under real conditions, without limitations or selectiveness of pictures.

Because this extremely high quality of evidence is available, it would serve justice to give it to the Jury. Especially here, it would unfairly prejudice Plaintiffs to disallow it,

particularly where Defendant has had "24-7-365," unfettered access to the scene, and had restricted Plaintiffs access to the same evidence. Moreover, the language barrier for these particular workers in describing their jobs, renders it more unfair and places them at a disadvantage that can be mitigated by providing the Jury the highly probative evidence of a Jury View. Thus, the Jury View can level the playing field for these workers, who are particularly disadvantaged in communicating verbally to the Jury. Also, Tyson has apparently taken videotape of the plant, using its own "access" advantage, which Tyson never produced during discovery, and Plaintiffs still have not seen.

Plaintiffs incorporate the accompanying Memorandum in Support of this Motion, which sets forth the law and further explains the reasons for permitting a Jury View.

Respectfully submitted,

THOMAS J. ELLIOTT
FREDERICK P. SANTARELLI
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422
(215) 977-1000

BRIAN P. KENNEY
1617 J.F.K. Boulevard
Suite 640
Philadelphia, PA 19103
(215) 569-8840

- and -

ROBERT J. O'SHEA
1818 Market Street
Suite 3520
Philadelphia, PA 19103-3629
(215) 636-0990
Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELANIA FELIX DE ASENCIO, ET AL. : | No. 00-CV-4294 |
| Plaintiffs, : | |
| v. : | |
| TYSON FOODS, INC. : | |
| Defendant. : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFSS
MOTION FOR JURY VIEW**

I.  **INTRODUCTION**

Plaintiffs submit this Memorandum in Support of their Motion to allow a Jury View of the premises of Tyson Foods, Inc.'s New Holland complex. The Jury can actually see and experience the facts in real time and free of any staging or limitations of selectively-produced pictures, or the many restrictions that Tyson imposed on Plaintiffs in the single instance an expert was permitted limited videotaping of certain activities inside the plants during discovery. ***This is the most probative and helpful evidence for any Jury to decide this unique case.***

Indeed, a Jury View will also provide ***both sides*** the fairest opportunity to present the most factual and valuable evidence for the Jury to best judge the facts of this case and render a verdict. Indeed, this case, and the issues to be decided by this Jury, are most uniquely suited for a Jury View moreso than any other cases in which Jury Views may have been requested in the past. The Jury should view, sense and fully appreciate actual activities in a realistic setting, so they can fully appreciate the "fruits and toil" of the Plaintiffs' work. As the United States Supreme Court stated in the first paragraph of its landmark FLSA case, *Tennessee Coal v. Muscoda Local No.* 123, 321 U.S. 590 (1944):

> We are confronted here with the problem of *what constitutes work or employment* [in the particular job at issue there] within the meaning of the Fair Labor Standards Act .... This question ... arises out of conflicting claims ***based upon the actual activities pursued*** .... Such an issue can be resolved only by discarding formalities and adopting a realistic attitude, recognizing that we are dealing with human beings and with a statute that is intended to secure to them the fruits of their toil and exertion.

Attempted substitutes for the actual evidence of a Jury View -- such as pictures or the limited videotape Plaintiffs were permitted to take in discovery five (5) years ago, or verbal testimonial descriptions communicated largely in cumbersome "Spanish – English" translated testimony -- should not be the *sole* evidence, where we have the ability to do a Jury View.

Moreover, even to the extent that Plaintiffs do have limited videotape of the Tyson plant and its workers under Tyson-imposed restrictions, that videotape, although helpful for the Jury, was tailored for the expert's purposes of gaining the information that the expert desired in order to write his report. The video, while it is presently the best available evidence, was not created for the express purpose of giving the Jury a full sense and appreciation of what is their employment and actual work activities, especially due to the restrictions imposed by Tyson.

Under the circumstances, where Tyson has had unfettered access all these years -- and apparently has its own videotape that it never produced in discovery, as just recently learned, -- including one identified in May 30, 2006 exhibit list for trial -- it would serve justice to permit the Jury View in this unique case, especially if Tyson is allowed to exploit its advantage by introducing previously undisclosed and unproduced videotape from inside the Plant.

## II.   ARGUMENT

### A.   The Court's Authority To Permit A Jury View

A federal court exercises its inherent powers in permitting a Jury view. *Kelley v. Wegman's Food Market, Inc.*, 98 Fed. Appx. 102, *104 (3d Cir. 2004)("*Wegman's II*")(citing *Clemente v. Carnicon-Puerto Rico Management Assocs., L.C.*, 52 F.3d 383, 385 (1st Cir. 1995)).

2

As such, it is in the trial court's sound discretion to permit a Jury view. *Kelley v. Wegman's Food Market, Inc.*, 2003 U.S. Dist. LEXIS 8066, *13 (E.D. Pa. 2003) ("*Wegman's I*") (citing *U.S. v. Pettiford*, 962 F.2d 74, 76 (1st Cir. 1992)). In the exercise of its discretion, this Court has previously looked to whether other evidence such as testimony, photographs or video are sufficient to allow the Jury to *fully appreciate* the case. *Id.* In addition, the Court may look to such factors as "the orderliness of the trial, whether the Jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *Id.* (citing *U.S. v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997)).

Here, the "substitute" evidence does not allow the Jury to *fully appreciate* what these workers must do in their jobs, and how and why doing it is controlled, required, needed inside the New Holland plants and for Tyson's benefit. It is a rare case where this kind of evidence is available to help answer the questions a Jury must answer in a case. When such evidence as this is available, it serves justice to provide it to the Jury. It would disserve justice to these workers (and to Tyson, if it is genuinely interested in having the Jury see the <u>most</u> probative evidence) to deny the Jury this opportunity.

Under these circumstances, and in this unique case in which the Jury can see and experience, in real time, the actual activities they will be judging in deciding whether it is "employment" or "work," the extremely high probative value clearly justifies any time or effort that may be involved with bringing the Jury to see the actual Tyson plant and the actual activities they will be judging. The only evidence that presently exists, other than verbal descriptions largely from witnesses who cannot communicate in English to the Jurors, or the self-serving verbal testimony of Tyson's own managers, is a single day's videotapes, taken five (5) years ago, under conditions dictated by Tyson and which Tyson could stage in advance. Plaintiffs would be

3

at a high disadvantage compared to Tyson, which has had unfettered, "24-7-365" access and ability to videotape the premises for the six (6) years since this case has been filed.

A Jury View will assure fairness and a level playing field, as well as the goal of truth and providing the Jury the best evidence that is so uniquely accessible and available. Tyson should have the same goals. Tyson cannot justify compromising these goals and, to the extent it does, its reasons would be merely self-serving to prejudice Plaintiffs' ability to show the Jury the whole truth about the facts and issues they will be judging.

**B.     The Unique Central Issue In This Case Makes It Ideal For A Jury View.**

In *Wegman's I*, this Court denied a motion by Wegman's Food Markets for the Jury to visit its store in order to view the scene where a woman was assaulted a year earlier. 2003 U.S. Dist. LEXIS 806. (Attached hereto as Exhibit "1"). That was based, however, on the belief that "it was not necessary in order for the Jury to fully appreciate the case, especially in light of the numerous photographs and reports, and relevant testimony [] allowed into evidence." *Id.* at *14.

Similarly, in both *U.S. v. Pettiford* and *U.S. v. Crochiere*, the two cases cited by this Court in *Wegman's I*, the courts denied motions for the Jury to view the locations of the past events of Pettiford's arrest and the prison cell, where Crochiere had poured boiling water on a prisoner. 962 F.2d 74, 74 (1st Cir. 1992), and 129 F.3d 233, 234 (1st Cir. 1997). The "scenes" in those cases were not activities. Moreover, the "scenes" in those cases would have shown only the settings, and the abandoned staging, of isolated one-time events that happened long before the Jury would ever arrive at the "scene" in these cases. In those instances, it was more readily the case, as this Court found, that "substitute evidence" in the form of testimony, photographs or videos were sufficient and comparable to enable the Jury to fully appreciate the facts.

4

***Here, the Tyson plant is not merely the setting of a past one-time event. It is the continued setting for the continued work for the Plaintiffs today, and continuing throughout the period.*** During this period, Plaintiffs have had videotape access only on October 16, 2001, after many objections and restrictions demanded by Tyson. Unlike other cases where juries are asked to view "scenes" of accidents or crimes, the Tyson plant is still fully operational. The sights, smells and atmosphere of the plant -- all of which is evidence directly probative to the Jury's decision -- are fresh and continuous and accessible. Donning, doffing and sanitizing activities and related work is practiced there everyday. Here, the Jury would not only be able to view the Tyson premises, but experience the working environments in real time. In this regard, no amount of two dimensional photographs or video, and no amount of verbal testimony, can compare to or replace the Jury actually seeing, smelling and experiencing, with their own eyes, ears and senses, the actual facts they will be judging.

### C.  Defendant Has Unparalleled Access To, And Fimiliarity With, The Tyson Plant, Which It May Have Used To Create Its Own Video -- Which Tyson Never Provided In Discovery -- Giving Further Need For A Jury View.

Especially to the extent the Defendant has, in fact, constructed some sort of video from its unfettered access to the Plaint, and never produced it, to the extent the Court does not exclude it, there is obvious prejudice to Plaintiffs and an unfair advantage given to Defendant. This is yet another reason the Court should permit the Jury View.[1]

The Plant is not "public property." Nor is it owned by some disinterested party who will readily give Plaintiffs access to videotape. It is owned by an <u>adverse party</u> who has every interest to limit access by Plaintiffs' counsel for proof purposes. In exercising the Court's discretion, Plaintiffs' "access" to the Tyson plant must be juxtaposed to Defendant's unfettered

---

[1] Plaintiffs have not seen any such video or others that Tyson may have and never produced. Tyson has not produced them to Plaintiffs. If Tyson seeks to introduce any such videotape at trial, Plaintiffs will object and request preclusion under Rule 37(c).

"24-7-365" access to the plant during all of the years this litigation has been pending. The Defendant owns the plant, has daily unfettered access to the plant, and is familiar with the important aspects, perspectives and angles of the plant, which Defendant may exploit (or minimize) in its own favor, especially if it wanted to take a video, as it apparently has done here but never produced them in discovery. This undue advantage could be further exploited by Defendant, if it ever made videos of the plant and the workers, which it never produced to Plaintiffs.

### III. CONCLUSION

Due to the unique circumstances of this case, and the need for the Jury to fully appreciate the work of the Tyson plant so they can judge the facts with their own eyes, ears and senses, the Jury has the actual ability to do so for the very issues they will be deciding. Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Jury View at a time convenient during trial.

Respectfully submitted,

THOMAS J. ELLIOTT
FREDERICK P. SANTARELLI
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422
(215) 977-1000


BRIAN P. KENNEY
1617 J.F.K. Boulevard
Suite 640
Philadelphia, PA 19103
(215) 569-8840

6

                      - and -

                ROBERT J. O'SHEA
                1818 Market Street
                Suite 3520
                Philadelphia, PA 19103-3629
                (215) 636-0990

Dated: June 2, 2006        Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing is being served upon the person(s) and in the manner set forth below:

<u>By Electronic Filing and Service Procedures</u>

James L. Griffith, Esquire
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
(Telephone No. 215-965-1210)

Michael J. Mueller, Esquire
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1333 New Hampshire Avenue, N,W.
Suite 400
Washington, D.C. 20036
(Telephone No. 202-887-4113)

/s/ Frederick P. Santarelli
FREDERICK P. SANTARELLI

Dated: June 2, 2006